DAVID ROSS *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF WESTPORT
(AC 30210)

Harper, Robinson and Mihalakos, Js.

Argued April 20—officially released November 24, 2009

*Ira W. Bloom*, for the appellant (defendant).

*Robert A. Fuller*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The zoning board of appeals of the town of Westport (board) appeals from the judgment of the trial court sustaining the appeal by the plaintiff,

David Ross.[1] On appeal, the board claims that the court improperly (1) concluded that the town zoning enforcement officer (officer) and board had no authority to enforce state or federal statutes that were implemented after the date that the relevant subdivision plan was approved, (2) failed to remand this case to the board for further review to consider existing zoning violations, illegalities and discrepancies and (3) concluded that the zoning enforcement officer was estopped from enforcing established errors in the plaintiff's submissions and approvals. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion of the present appeal. The plaintiff is the owner of certain real property located at 8 Sandpiper Road in Westport. The subject property is part of a subdivision approved by the Westport planning and zoning commission (commission) on October 20, 1965. In 2001, the plaintiff sought to construct a two-story, single-family dwelling on the then vacant parcel. He filed an application with the commission for approval of a coastal area management site plan, which was approved on July 26, 2001. After receiving all necessary approvals, the plaintiff was issued a zoning permit on August 31, 2001, and a building permit on October 12, 2001. Final inspection of the property was conducted on December 30, 2003, and the plaintiff was issued a certificate of zoning compliance on March 11, 2004.

On March 15, 2004, the plaintiff filed a new coastal site plan application with the commission, seeking approval for an addition to the existing dwelling. At a meeting conducted on July 26, 2004, the commission denied the application. The plaintiff appealed to the trial court,

[1] The court also sustained the plaintiff's appeal in a related matter involving an appeal from the Westport planning and zoning commission's denial of the plaintiff's coastal site plan application. See *Ross* v. *Planning & Zoning Commission*, 118 Conn. App. 55, 982 A.2d 1084 (2009).

which sustained the appeal. Thereafter, this court affirmed the judgment of the trial court.[2] See *Ross* v. *Planning & Zoning Commission*, 118 Conn. App. 55, 982 A.2d 1084 (2009).

While the appeal was pending in the related matter; see footnote 1 of this opinion; the officer sent notice to the plaintiff that his zoning permit and certificate of zoning compliance were revoked on February 10, 2005. On March 11, 2005, the plaintiff appealed to the board from the action of the officer. A public hearing was conducted by the board on June 14, 2005; thereafter, on June 28, 2005, the board denied the appeal. Although the board did not reference in its notice of decision any specific zoning regulation that it believed the plaintiff had violated, the record demonstrates that the board's decision was predicated on alleged violations of its coastal area regulations, flood plain regulations and lot coverage regulations.

On July 18, 2005, the plaintiff commenced the present appeal to the court. This appeal and the appeal in the related matter were consolidated for the purposes of the hearing; however, the court issued separate memoranda of decision sustaining both appeals. Although separate, the memorandum of decision sustaining the appeal from the commission's decision incorporated by reference its discussion in the memorandum of decision sustaining the appeal from the decision of the board. Accordingly, the memorandum sustaining the appeal underlying the present matter before this court provides an analysis of both appeals. This appeal followed.

As a preliminary matter, we note that the intertwined nature of the two companion appeals is evident from

---

[2] We note that we have derived several facts from the record presented in *Ross* v. *Planning & Zoning Commission*, 118 Conn. App. 55, 982 A.2d 1084 (2009). These are not disputed issues in the present appeal and are included only for the purpose of providing the full context of the circumstances underlying this matter.

the joint nature of the court's memorandum of decision as well as the parties' arguments on appeal. Therefore, for clarification purposes, we find it necessary to distinguish the specific issues raised in the present matter to focus our review properly in this case.[3] The present appeal specifically addresses the board's decision to uphold the officer's revocation of the plaintiff's zoning permit and certificate of zoning compliance. In the memorandum of decision sustaining the plaintiff's appeal from the board's decision, the court determined that the property was exempt from any zoning regulations enacted after October 21, 1965, the date when the subdivision map that included the plaintiff's property was approved by the commission. The court also noted that the board's decision did not identify any specific zoning violation. Ultimately, the court concluded that the construction complied with the applicable zoning regulations. On those grounds, the court sustained the plaintiff's appeal from the decision of the board.[4]

[3] The legal arguments contained in the briefs of both parties do not discern between the issues underlying each distinct appeal. For example, in the present case, the board argues that the court improperly concluded that "the planning and zoning commission had no jurisdiction in 2001 and no statutory authority to regulate it." (Internal quotation marks omitted.) A review of the memorandum of decision reveals that this statement by the court is not applicable to the present case. As previously noted, the court had issued separate memoranda of decision; however, the analysis incorporated into each decision discusses issues arising in both appeals.

Of particular relevance is the fact that the court's discussion immediately preceding this statement referenced by the board involved the commission's jurisdiction to review a coastal site plan. The court then stated: "The same situation applies to the first site plan appeal. Since the commission had no jurisdiction over it and no statutory authority to regulate it, the plaintiff's property did not have to conform to and was exempt from regulation." Thus, this statement applied to the court's discussion of the appeal from the decision by the commission, which involved the 2004 denial of a coastal site plan, the third of three such applications filed by the plaintiff.

[4] The memorandum of decision sustaining the plaintiff's appeal from the board also provides a discussion of the court's analysis pertaining to the companion appeal from the commission's denial of the plaintiff's third coastal site plan application. Regarding this appeal, the court found that the commission lacked subject matter jurisdiction over the coastal site plan

I

The board's first claim is that the court incorrectly held that the officer and the board were without authority to enforce state and federal statutes that were enacted subsequent to the approval of the plaintiff's subdivision in 1965. In support of this contention, the board advances four arguments: (1) neither General Statutes § 8-26a[5] nor *Poirier* v. *Zoning Board of Appeals*, 75 Conn. App. 289, 815 A.2d 716, cert. denied, 263 Conn. 912, 821 A.2d 766 (2003), operate to deprive the board of jurisdiction to enforce state and federal statutes, including its enforcement of regulations promulgated by the Federal Emergency Management Agency

applications filed by the plaintiff because the property was located more than 200 feet from the mean high water mark. The propriety of this conclusion is addressed in the companion matter. See *Ross* v. *Planning & Zoning Commission*, supra, 118 Conn. App. 55.

[5] General Statutes § 8-26a provides in relevant part: "(b) (1) Notwithstanding the provisions of any general or special act or local ordinance, when a change is adopted in the zoning regulations or boundaries of zoning districts of any town, city or borough, no lot or lots shown on a subdivision or resubdivision plan for residential property which has been approved, prior to the effective date of such change, by the planning commission of such town, city or borough, or other body exercising the powers of such commission, and filed or recorded with the town clerk, shall be required to conform to such change.

"(2) (A) Any construction on a vacant lot shown on a subdivision or resubdivision plan approved before, on or after June 1, 2004, shall not be required to conform to a change in the zoning regulations or boundaries of zoning districts in a town, city or borough adopted after the approval of the subdivision or resubdivision. Notwithstanding subdivision (1) of this subsection, any construction on an improved lot shown on a subdivision or resubdivision plan approved before, on or after June 1, 2004, shall be required to conform to a zoning change adopted subsequent to said lot becoming an improved lot.

"(B) For purposes of this subsection, (i) a lot shall be deemed vacant until the date a building permit is issued with respect thereto and a foundation has been completed in accordance with such building permit but shall not be deemed vacant if any structures on such lot are subsequently demolished, and (ii) a lot shall be deemed improved after the date a building permit is issued with respect thereto and a foundation has been completed in accordance with such building permit."

(agency); (2) even if § 8-26a does strip it of jurisdiction to enforce state and federal laws that were enacted after the subdivision was approved, it retains jurisdiction under the related theories of waiver and manifest jurisdiction; (3) both Westport's zoning regulations and Connecticut's jurisprudence explicitly provide for the revocation of a zoning permit; and (4) public policy supports a decision to allow it to enforce agency regulations relating to flood zones. We agree with the court that the board and the officer were without jurisdiction to enforce federal and state laws that were not in existence at the time that the subdivision was approved.

We begin by setting forth the legal principles and standard of review that guide our resolution of the board's appeal. "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction. . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.) *Burton* v. *Commissioner of Environmental Protection*, 291 Conn. 789, 802, 970 A.2d 640 (2009). Moreover, "[a] determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) Id.

In connection with the board's first argument, that neither § 8-26a nor *Poirier* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 289 (lot shown on subdivision

plan for residential property approved prior to effective date of change in zoning regulations not required to conform to subsequent change), operate to deprive it of jurisdiction to enforce state and federal statutes, we are not persuaded. We begin by consulting the text of § 8-26a to ascertain whether this case comes within the ambit of that statute. Section 8-26a (b) (1) provides in relevant part that "when a change is adopted in the zoning regulations . . . of any town . . . no lot . . . shown on a subdivision or resubdivision plan for residential property which has been approved, prior to the effective date of such change, by the planning commission of such town . . . and filed or recorded with the town clerk, shall be required to conform to such change." Thus, our initial analysis inquires (1) whether the plaintiff's lot is on a subdivision plan that was properly approved and recorded and (2) whether the approval and recording of that subdivision occurred prior to the subject change in the board's zoning regulations.

It is not disputed that the subdivision lot on which the plaintiff built his home was approved by a properly authorized planning commission on October 20, 1965, and that it is recorded as lot 14 on map number 6054 in the Westport land records. Moreover, the record demonstrates that Westport's zoning regulations include provisions that regulate coastal areas; see Westport Zoning Regs., § 31-10; flood plains; see id., § 31-11; and lot coverage limits for homes in residence A district. See id., § 13-6. Thus, the regulations that the board suspects the plaintiff to have violated are presumptively "zoning regulations." See *Poirier* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 295 (regulations found in town's zoning regulations "presumptively a 'zoning regulation' "); see also id., 302 ("we find no indication that the legislature intended distinctions to be drawn between certain zoning regulations, for example, that

protection might extend to changes in setback require-ments, but not to changes in coverage requirements"). Finally, it is undisputed that the subject zoning regula-tions were not in effect in 1965, at the time the plaintiff's subdivision was approved and recorded.

Our analysis does not end there, however, because § 8-26a was amended in 2004 to clarify which subdivi-sion lots are eligible for its exemption. See Public Acts 2004, No. 04-210, § 1 (P.A. 04-210). As amended, § 8-26a draws a distinction between subdivision lots that are vacant at the time of construction and those that have been improved: vacant lots are exempt from zoning regulations enacted after the subdivision was approved and recorded, while improved lots do not enjoy that exemption. See General Statutes § 8-26a (b) (2) (A). According to the statute, "a lot shall be deemed vacant until the date a building permit is issued with respect thereto and a foundation has been completed in accor-dance with such building permit but shall not be deemed vacant if any structures on such lot are subsequently demolished . . . ." General Statutes § 8-26a (b) (2) (B). By contrast, "a lot shall be deemed improved after the date a building permit is issued with respect thereto and a foundation has been completed in accordance with such building permit." General Statutes § 8-26a (b) (2) (B). In this case, the record supports the court's conclusion that the plaintiff's lot was vacant when he sought a building permit to construct his new home in 2001. Accordingly, because the plaintiff has satisfied each of the statute's prerequisites, we agree with the court that the plaintiff's lot fits squarely within the con-tours of § 8-26a, and that, as a consequence, he is not required to comply with zoning regulations enacted after 1965.[6]

---

[6] These conclusions are coterminous with those reached by Westport's director of planning and zoning, Katherine Barnard, who authored a letter to the plaintiff on July 16, 2003, advising him that "development [of a new house] on the property may conform to the zoning regulations in effect on

Our conclusion in this regard also enjoys support from the holding in *Poirier* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 289. In that case, this court held that a homeowner was entitled to a building permit to erect a garage and breezeway that did not conform to the zoning regulations in effect at the time of the proposed construction because § 8-26a operated to allow the homeowner to instead comply with the zoning regulations that were in effect at the time the subdivision was approved and recorded in 1954. Id., 298. In *Poirier*, as in the present case, it was not disputed that the subject subdivision plan was properly authorized and recorded. Id., 295. Moreover, in both *Poirier* and in the present case, the disputed regulations were found in the zoning regulations on file in the planning and zoning department of the town. See id. Although the legislature has narrowed the zoning compliance exception since this court reviewed § 8-26a in *Poirier* by limiting its availability to vacant lots; see P.A. 04-210, § 1; that amendment did not disturb our previous holding that § 8-26a is not retroactive, though it nevertheless applies to subdivisions that were properly approved and recorded prior to its enactment. *Poirier* v. *Zoning Board of Appeals*, supra, 295–98. Accordingly, as in *Poirier*, we conclude that the plain terms of § 8-26a conferred on the plaintiff a vested right, and that right entitles him to a build a house in conformity with the zoning regulations that were in effect at the time his subdivision was approved and recorded.

The board next appears to argue both that § 8-26a does not apply to municipal zoning regulations that separately sound in state and federal law and that the exemptions contained within § 8-26a, as elucidated by this court's decision in *Poirier*, should not include municipal zoning regulations enacted under a statutory

March 5, 1964" because his property was situated on a properly approved subdivision.

grant of power outside chapter 124 of the General Statutes, which governs zoning. Whatever merit those arguments may have,[7] the board does not provide a cohesive analysis of these claims and, instead, refers to the discussion set forth in its brief filed in support of the related appeal. See *Ross* v. *Planning & Zoning Commission,* supra, 118 Conn. App. 55. The analysis contained within the board's brief for this matter does not provide citations to relevant legal authority, let alone apply such precedent to the evidence contained in the record currently before us. We, therefore, decline to review these claims due to inadequate briefing. See *State* v. *Brown,* 256 Conn. 291, 312–13, 772 A.2d 1107 (failure to discuss application of relevant law to facts amounts to inadequate brief for purposes of appellate review), cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001).

Similarly, the board's alternative argument that even if § 8-26a strips it of jurisdiction to enforce zoning laws that were enacted after the subdivision was approved, it retains jurisdiction under the related theories of waiver and manifestly valid jurisdiction, is also inadequately briefed. "We are not obligated to consider issues that

---

[7] We note without deciding that "as a creation of the state, a municipality [whether acting itself or through its planning and zoning commission] has no inherent powers of its own . . . and that [it] possesses only such rights and powers that have been granted *expressly* to it by the state . . . ." (Emphasis in original; internal quotation marks omitted.) *Buttermilk Farms, LLC* v. *Planning & Zoning Commission,* 292 Conn. 317, 326, 973 A.2d 64 (2009). Thus, all zoning regulations, whether those related to flood plains or those detailing setback provisions, find their geneses in a state law that enables a municipality to enforce such regulations. Consequently, efforts to excise from the exemption contained in § 8-26a (b) municipal zoning regulations that likewise sound in state or federal law strike us as fruitless.

Similarly, in light of the fact that § 8-26a resides in chapter 126 of the General Statutes, the contention that its reach is confined to zoning regulations promulgated under chapter 124 of the General Statutes, and is, therefore, not even applicable to subdivision regulations enacted under the same chapter in which § 8-26a is located, appears equally unavailing.

are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." (Citations omitted; internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008). Accordingly, we do not reach this issue.

The board's third argument in support of its broad contention that it has jurisdiction to enforce its current zoning regulations against the plaintiff is that the court failed to acknowledge the right of the officer to revoke a zoning permit and certificate of zoning compliance if a subsequent review of the property results in the discovery of zoning violations. To buttress its argument in this regard, the board references § 45-3 of the Westport zoning regulations, which provides that a zoning enforcement officer has express authority to revoke a zoning permit if a subsequent review reveals that the conditions of the permit have not been met or have been violated.[8] Additionally, the board cites several cases standing for the unobjectionable proposition that a zoning committee or appeals board may revoke a permit after subsequently determining that the property is noncomplying. See, e.g., *Manchester* v. *Zoning Board of Appeals*, 18 Conn. App. 69, 73, 556 A.2d 1026 (upholding revocation of zoning permit after zoning board of appeals subsequently determined lot was not valid nonconforming use), cert. denied, 212 Conn. 804, 561 A.2d 946 (1989). Although the board is correct that its officer

[8] Section 45-3 of the Westport zoning regulations provides in relevant part: "If the conditions of the Planning & Zoning Commission resolution, conditions of the Zoning Board of Appeals variance or Zoning Permit have not been met, have been violated or if work extends in time or scope beyond the approvals then the Zoning Permit shall be revoked. . . ."

may revoke a permit in the proper circumstance, that authority is necessarily premised on a finding that the conditions of the permit or certificate have not been satisfied. See id. That did not happen here. Instead, the officer revoked the plaintiff's building permit and compliance certificate for alleged violations of inapplicable zoning regulations, which neither Westport's zoning regulations nor our jurisprudence countenance.

The fourth argument advanced by the board in support of its overriding argument that it has jurisdiction to enforce current zoning regulations against the plaintiff is that public policy militates in favor of requiring him to comply with regulations that protect his health and safety or that of the environment. In this respect, the board offers news articles chronicling the importance of flood plain regulations in the wake of Hurricane Katrina, as well as commentary speculating as to the lifesaving impact that a wetlands buffer could have achieved in New Orleans. Although we are sympathetic to these considerations, those issues are for our legislature to consider in its deliberative wisdom. See *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 146, 717 A.2d 747 (1998) (*McDonald, J.*, concurring) (courts "should leave policy decisions to the legislature"). Moreover, as this court noted in *Poirier*, "[t]he legislature has clearly made a policy decision that once the division of the land and proposed lot layout has been reviewed by the municipality through its planning commission the subdivision does not have to be reviewed again, and that the subdivision lots are not affected by subsequently enacted zoning regulations." (Internal quotation marks omitted.) *Poirier* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 298. Although the General Assembly has amended § 8-26a to narrow the reach of its exception to vacant lots, the public policy behind that exception remains intact. Accordingly, we decline to substitute our policy prerogatives for those of the legislature.

In view of the foregoing, we agree with the court that the 1965 subdivision plan that includes the plaintiff's lot, and which was approved, filed and recorded in the town of Westport prior to enactment of the subject zoning regulations, places his lot within the intended scope of § 8-26a (b) and its attendant exceptions. Moreover, because § 8-26a foreclosed the board and its officer from enforcing zoning regulations promulgated after 1965, the building permit issued on October 12, 2001, and the certificate of zoning compliance granted on March 11, 2004, which were both predicated on compliance with zoning regulations enacted after 1965, were nullities ab initio. Consequently, there was nothing for the officer or the board to revoke, and both the officer and the board remain without jurisdiction to enforce the disputed regulations against the plaintiff.[9]

II

The board's final argument is that the court improperly failed to remand the case to the board for further review of the plaintiff's compliance with its zoning regulations. We agree, albeit on different grounds.

It is well settled that "a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency *or to make factual determinations on its own*. . . . Upon appeal the function of the court is [limited] to examin[ing] the record of the hearing before the board to determine whether the conclusions reached are supported by the evidence that was before [the board]." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691,

[9] Having concluded that the board and the officer are without jurisdiction to enforce against the plaintiff zoning regulations enacted after 1965, we do not consider the board's argument that the court improperly concluded that the officer was estopped from enforcing established errors in the plaintiff's submissions and approvals.

708–709, 784 A.2d 354 (2001). In this case, the board did not make a determination as to whether the plaintiff's new house was in compliance with its 1965 zoning regulations. Indeed, as the court noted, the board's decision upholding the officer's revocation of the plaintiff's building permit and compliance certificate did not mention the town's 1965 zoning regulations at all.[10] In the absence of any such action by the board, the record before the trial court was inadequate for its review. Because the board, not the trial court, was required to issue a decision with respect to the plaintiff's compliance with the applicable zoning regulations, the trial court improperly decided that issue on the merits instead of remanding the case to the board for its consideration of that question. See id., 709. Accordingly, we conclude that the court improperly declined to remand the case to the board for its consideration of that issue.

The judgment is affirmed and the case is remanded with direction to remand the case to the zoning board of appeals for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

_____

[10] Moreover, we note that the record is not at all clear that the plaintiff's house is in compliance with the 1965 zoning regulations. By way of example, one of the conditions of approval for the plaintiff's subdivision is that the houses on lots 5 through 14 are restricted to three bedrooms. In light of the alleged construction that the plaintiff has undertaken on the lower level, which could be an additional bedroom, the record was inadequate for the court to conclude that the plaintiff was in compliance with the 1965 zoning regulations.